(94 App. Div. 326.)

### MARCUS v. SEGEAL et al.

(Supreme Court, Appellate Division, First Department. May 13, 1904.)

1. PARTNERSHIP—CONTRACT—CONSTRUCTION.

A contract provided that, defendant S. being about to engage in a certain business, it was agreed between him and plaintiff and the other defendant that they should enter into a copartnership for that purpose, S. being required to invest $5,000 in the business, and the other partners their skill, labor, and services during the existence of the partnership; each of the partners to share equally the profits and losses. The fourth clause of the agreement provided that, so far as the partners other than S. were concerned, the agreement should be considered as a contract of employment by S., with the exception that the parties were entitled to their porportionate profits and their weekly drawings previously fixed. *Held*, that the fourth clause of the agreement should be construed to relate merely to the management of the affairs of the business for which the capital furnished by S. was contributed, and did not deprive the agreement of its effect as creating a partnership.

Appeal from Judgment on Report of Referee.

Suit by Benjamin H. Marcus against Benjamin H. Seageal and another. From a judgment on a referee's report in favor of defendants, plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Louis J. Jacoves, for appellant.
Sigmund Herkimer, for respondents.

INGRAHAM, J. The action was brought for an accounting. The complaint alleged that the plaintiff and the defendants were copartners under articles of copartnership, a copy of which was annexed to the complaint. The answers of the defendants consisted of a general denial. The case was tried before a referee, who found that between March 23, 1901, and the month of May, 1901, the plaintiff and defendants were engaged in business in the city of New York under and by virtue of a certain agreement, which is the agreement annexed to the complaint; that in the month of May, 1901, disagreements and dissensions arose between the plaintiff and the defendant Segeal, and that as a result of such dissensions and disagreements the business relations between the plaintiff and the defendants were severed. The referee also found, as a conclusion of law, that a copartnership was not created between the plaintiff and the defendants by virtue of the above-mentioned agreement, and that the plaintiff could not maintain his action in equity. From the judgment entered upon that report, this appeal is taken.

The sole question to be determined upon this appeal is whether or not a copartnership was constituted as between the parties to it. There is no allegation that there were any debts outstanding, or that a dissolution of the business and an accounting are necessary, except to determine the interest of the partners in the copartnership assets. The agreement was dated March 23, 1901. The defendant Segeal was the party of the first part, the plaintiff the party of the second part, and the defendant Frankel party of the third part. It recited that Segeal was about to establish a business for the purpose of buying, selling, and manufacturing skirts in the city of New York, and was desirous of investing the sum of $5,000 to carry on said business; that the plaintiff was a practical designer and willing to enter into a copartnership upon the conditions specified, and the defendant Frankel was an experienced salesman and desired to enter said copartnership with the plaintiff and Segeal to carry on said business. It then provided that the parties thereto were "to be copartners for a period of one year from date in the manufacturing, buying and selling 'skirts' and that the firm name of said copartnership shall be 'B. Segeal.'" The defendant Segeal agreed to invest and keep invested in the business the sum of $5,000 during its continuation, and the other parties were to invest their skill, labor, and services during the existence of the copartnership. The profits were to be divided equally between the parties at the rate of one-third each during the continuation of the copartnership, and each of the parties was to draw the sum of $20 per week. There were further provisions as to the duty that each party to the agreement was to perform; and, in addition to the clauses before mentioned, there was added what was called the "fourth clause," to which attention will be called.

There can be no doubt but that this agreement, leaving out the fourth clause, would constitute a copartnership. It is so expressly provided in the first clause, and every clause of the agreement, with the exception of the fourth, speaks of the business to be conducted as a copartnership, regulates and prescribes the duties of the several copartners, and provides for a division of the profits, as such, among those interested in the business equally, and that the losses should be borne in the same pro-

portion. The distribution of the profits and the liability for the losses, as between the parties to the agreement, was entirely inconsistent with the idea that either of the parties to the agreement became an employé of either of the other parties. Such an agreement for distribution of profits as such, with a liability for losses in the business, is necessarily a copartnership agreement, and is entirely inconsistent with a contract of employment by which one party becomes the employé of the other.

The fourth clause of this agreement provides:

"Fourth. It being further understood and agreed that in consideration of the amount of money invested by the party of the first part, and no money being invested by the parties of the second part and third part, that this agreement be construed, as far as the parties of the second part and third part are concerned, an agreement of employment by the party of the first part during the period aforementioned, and with the exception that the said parties be entitled to their proportionate profits and their weekly drawings as aforementioned."

Reading this clause in connection with the other provisions of the agreement, it seems to me quite evident that the intention of the parties was to prevent either the plaintiff or the defendant Frankel from making any claim to the capital contributed by Segeal. The clause does not provide that the parties shall not be copartners, or that the other provisions of the agreement in that respect should be modified, but the consideration for the provision is that Segeal had advanced all the capital of the copartnership, and it was understood that in regard to the management of the affairs of the business for which this capital would be liable the parties, as between themselves, agreed that the plaintiff and Frankel were to be considered employés. The question here is whether or not the plaintiff is entitled to an accounting in relation to this business, so that it can be ascertained whether any profits are coming to him or whether there are any losses for which he is responsible. That it was the intention of the parties to the agreement that he should be entitled to a share of the profits and should be liable for a share of the losses is clearly expressed; and this share of the profits was not to be paid to him for his services as a clerk or employé, but because he was to enter into a copartnership to be formed to conduct this business; and the right to share in the profits as such gives him a right, upon a dissolution or termination of the copartnership, to have his rights settled by an accounting, so that he may secure his share of the profits, if any exist, and his liability for losses ascertained, and the agreement terminated, so that his liability for future obligations might be terminated. There is nothing in this fourth clause that so changes the relation of the parties that the plaintiff should not have the right to such an accounting. I think, therefore, that the construction given to this contract by the referee cannot be sustained.

The respondents make a point that there is no certificate of the referee settling the case and ordering it on file. It is difficult to understand this point, in view of the certificate, which is signed by the attorneys for both sides, that the case as printed contains all the evidence, as well as the exhibits offered on the trial, with a direction by the referee that the case, with this stipulation a part of it, is settled, and that the printed record be filed with the clerk of this court. But irrespective

of such a certificate, the construction of this contract was a question of law, and did not in any way depend upon the evidence.

It follows that the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.